UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTONIO JONES,                        )
                                      )
      Petitioner,                     )
                                      )
v.                                    )     CIVIL ACTION NO.
                                      )     07-10032-DPW
PETER A. PEPE, JR., in his capacity as )
Superintendent, MCI-Cedar Junction    )
                                      )
      Respondent.                     )

MEMORANDUM AND ORDER
July 20, 2011

Petitioner Antonio Jones seeks federal habeas relief
pursuant to 28 U.S.C. § 2254 from his convictions by
Massachusetts state court for armed assault with intent to murder
and related offenses.  Jones alleges, among other bases,
violation of the Confrontation Clause and ineffective assistance
of counsel.  The respondent has moved to dismiss the petition.
For the reasons set forth below, I will grant respondent's
motion.

## I.  BACKGROUND

### A.   *Factual Background*

In this proceeding, the state court's factual findings
"shall be presumed to be correct" unless rebutted "by clear and
convincing evidence."  28 U.S.C. § 2254(e)(1).  The petitioner
does not challenge the factual findings referenced in the Appeals
Court's decisions, with the exception of one characterization,
which will be discussed in Note 5 *supra*.  The facts contained in

1

this section are thus recited as set forth by the Appeals Court, supplemented where necessary by the state record.

In the afternoon of July 14, 1995, Shawndell Moore came out of the front door of a pool in Roxbury, Massachusetts, when suddenly he was approached by three males. After a brief altercation, one of the assailants, later identified as the petitioner, slapped Moore on the head. As Moore attempted to escape, the petitioner pulled a chrome firearm from his waistband and shot him in the stomach. Moore collapsed and the petitioner ran off. Dawn Jennings, who witnessed the shooting from a distance of four to five feet, described the petitioner as being six feet four tall, having crooked teeth with bloodshot eyes and wearing a green t-shirt and black pants. Nine-year old Quantraun Taylor and his aunt, Sandra Taylor, also witnessed the shooting.

On July 19, 1995, the police executed a search warrant, arising out of an unrelated matter, at the Taylors'[1] residence located at 49 Cedar Street in Roxbury. Several items, including firearms, ammunition and drugs, were found and seized by the police that day. Both Sandra Taylor, and her mother, Julia Taylor, were taken to the police station.

---

[1] The record suggests that Julia Taylor, as well as her two grandsons, Quantraun Taylor and Kenneth Taylor, and her daughter, Sandra Taylor, all lived at 49 Cedar Street at the time of the events.

Around the same time period,[2] the petitioner approached Quantraun Taylor and threatened to kill him and his family if he were to discuss the shooting with the police. When Quantraun reported the threat to his grandmother, Julia Taylor, Mrs. Taylor decided to contact Detective Lawrence VanZandt, who had been a family friend for many years. Detective VanZandt went to the Taylor's residence on the following day to discuss the matter, and then took Quantraun and his aunt to the police station to attempt to identify the shooter from books of photographs. Both Quantraun and Sandra Taylor skimmed through the books but neither identified the shooter.

On August 20, 1995, Detective VanZandt returned to 49 Cedar Street with a book of photographs; some, but not all, the photographs contained in this book had been showed previously to Quantraun and Sandra. Both Quantraun and Sandra reviewed the book separately and identified picture numbered 3843 as "Booboo," the shooter. Photograph numbered 3843 was a picture of the petitioner. Later, State Police Trooper Catanese, who had been assigned to this case, showed Dawn Jennings separate arrays of photographs, which included a picture of the petitioner, but Jennings failed to identify anyone as being the shooter. Two

---

[2]  At trial, Quantraun Taylor testified that the petitioner began threatening him "approximately two days after" the shooting.

weeks after he was shot, Moore passed away but not as a result of the shooting.

**B.   *Procedural Background***

### 1.   State Court Proceedings

On September 23, 1996, a grand jury charged Jones with armed assault with intent to murder, assault and battery with a dangerous weapon, unlawful possession of a firearm without a license, unlawful possession of ammunition without identification, and threats.  On June 15, 2000, following a four-day jury trial in Superior Court, the petitioner was found guilty on all counts and later sentenced to eighteen years of imprisonment and the petitioner initiated a direct appeal.

While the direct appeal was pending, Jones moved for a new trial and requested an evidentiary hearing.  The trial court denied the motion for a new trial on December 29, 2003, and the petitioner appealed that order which was consolidated with the direct appeal.  As grounds for his appeal, Jones argued that the trial court had unfairly restricted his right to cross-examine key witnesses in violation of the Confrontation Clause and had admitted an unduly suggestive in-court identification by Dawn Jennings.  The petitioner also raised an ineffective assistance of counsel claim, alleging that his trial attorney had, among other missteps, allowed damaging hearsay testimony regarding the petitioner's alleged prior bad acts to be introduced at trial.

On May 2, 2005, the Appeals Court on affirmed the convictions and the order denying the motion for a new trial. *Commonwealth v. Jones*, No. 01-1678, 2005 WL 1026538 (Mass. App. Ct. May 2, 2005) ("*Jones I*"). Jones petitioned for further appellate review, which was denied by the Supreme Judicial Court on July 5, 2005. His writ for certiorari was denied by the United States Supreme Court on January 9, 2006.

On May 14, 2007, approximately twelve years after the shooting, Kenneth Taylor[3] executed an affidavit purporting to exculpate Jones from responsibility for the offense and identifying Rasheed Fountain, a then-deceased individual, as being the gunman who shot Shawndell Moore. On this basis, the petitioner moved a second time for a new trial on January 9, 2008. The gist of Jones' argument was that Kenneth Taylor's affidavit warranted a new trial and suggested that the Commonwealth had failed to disclose exculpatory evidence prior to or during trial. The petition also seized the opportunity to raise a new ground for ineffective assistance of counsel based on his attorney's failure to call another witness, Rondella Williams,[4] to testify at trial. The trial court denied the petitioner's second motion for new trial, and the Appeals Court

---

[3] As reported in Note 1 *supra*, Kenneth Taylor is the grandson of Julia Taylor.

[4] "Rondella Williams" is also referred to as "Rondella Washington" in the state record.

affirmed on October 22, 2009.  *Commonwealth v. Jones*, No. 08-1925, 2009 WL 3379062 (Oct. 22, 2009) ("*Jones II*").  The Supreme Judicial Court denied a petition for further appellate review on March 31, 2010.

    2.  <u>Federal Habeas Proceedings</u>

Meanwhile, the petitioner had filed a federal habeas petition on January 8, 2007, alleging that his continued incarceration violated federal law.  Jones initially raised three separate grounds to support his petition: (1) violation of the Confrontation Clause, (2) unduly suggestive or unfair in-court identification, and (3) ineffective assistance of counsel.  In response, respondent moved to dismiss the petition on the merits. I denied that motion without prejudice on July 10, 2008, pending exhaustion of the petitioner's claims in state court as presented in his second motion for a new trial.

Following completion of state proceedings regarding petitioner's second motion for a new trial, he moved to amend the instant petition to add a fourth ground of relief, challenging the state court's refusal to allow an evidentiary hearing in connection with his second motion for a new trial.  After I allowed that motion, the parties briefed the respondent's second motion to dismiss the petition as amended.  That motion is now before me.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), through 28 U.S.C. § 2254, "sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, --- U.S. ----, 131 S. Ct. 1388, 1398 (2011).  A federal court may entertain only those applications alleging that a state prisoner "is in custody in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2254(a). Further, an application may not be granted "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the adjudication of the prisoner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* at § 2254(d); *see generally Williams v. Taylor*, 529 U.S. 362 (2000).  "This backward-looking language ["resulted" and "involved"] requires an examination of the state-court decision at the time it was made." *Pinholster*, 131 S. Ct. at 1398.

A decision is "contrary to" to federal law when the state "court applies a rule that contradicts the governing law set forth by the Supreme Court or confronts a set of facts that are materially indistinguishable from a decision of the [the Supreme

Court] and nevertheless arrives at a result different from [its] precedent." *Abrante v. St. Amand*, 595 F.3d 11, 15 (1st Cir. 2010) (quoting *Gomes v. Brady*, 564 F.3d 532, 537 (1st Cir. 2009) (internal citation and quotation marks omitted) (alterations in original). A decision results an "unreasonable application" of established federal law "if the state court 'identifies the correct governing legal rule but applies it unreasonably to the facts of a particular state prisoner's case.'" *Id.* (quoting *Aspen v. Bissonette*, 480 F.3d 571, 574 (1st Cir. 2007)). Even assuming that the state court's error rises to the level of being "unreasonable," habeas relief will still not be granted "unless the petitioner can also show that the error had a substantial and injurious effect or influence in determining the jury's verdict." *Shuman v. Spencer*, 636 F.3d 24, 30 (1st Cir. 2011) (quoting *Delaney v. Bartee*, 522 F.3d 100, 105 (1st Cir. 2008)) (internal citations and quotation marks omitted).

## III. DISCUSSION

The petitioner seeks habeas relief on four separate grounds: (A) violation of the Confrontation Clause, (B) unduly suggestive or unfair in-court identification, (C) ineffective assistance of counsel, and (D) failure to grant an evidentiary hearing. None of these grounds are sufficient to warrant the extraordinary remedy of habeas relief.

## A.    *Confrontation Clause*

Jones argues that the trial judge violated the Confrontation Clause of the Sixth Amendment of the United States Constitution by preventing defense counsel from inquiring of Julia and Sandra Taylor about the specific items (e.g., firearms, ammunition) seized during the search that took place at their residence after the shooting.  The Appeals Court rejected the petitioner's argument on the merits.  *Jones I*, 2005 WL 1026538, at *1-2.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in criminal proceedings "to be confronted with the witnesses against him."  U.S. CONST. AMEND. VI.  The United States Supreme Court has long recognized that the primary interest secured by the Confrontation Clause is "the right of cross-examination."  *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (quoting *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)).  "That right includes the right to conduct such cross-examination as is reasonably necessary to delineate and present the defendant's theory of defense."  *United States v. Vega Molina*, 407 F.3d 511, 522 (1st Cir. 2005).  Nevertheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination [based on] concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Brown v. Ruane*,

630 F.3d 62, 70 (1st Cir. 2011) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

In *Van Arsdall*, the Supreme Court held that a state court violates the Confrontation Clause when it prohibits defense counsel from conducting "otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Van Arsdall*, 475 U.S. at 680 (quoting *Davis*, 415 U.S. at 318). Applying this approach, the First Circuit has laid out a two-part test designed to determine whether a violation of the Confrontation Clause has occurred:

> The first question to be asked under the *Van Arsdall* test is whether the limitation prejudiced the examination of that particular witness. In other words, absent the limitation, would the jury have received a significantly different impression of the witness's credibility? . . . The second element of the *Van Arsdall* test is whether the error was harmless beyond a reasonable doubt; if so, reversal is not warranted.

*Knight v. Spencer*, 447 F.3d 6, 13 (1st Cir. 2006) (quoting *DiBenedetto v. Hall*, 272 F.3d 1, 10 (1st Cir. 2001)) (internal quotation marks omitted).

Application of the *Van Arsdall* test to the instant petition demonstrates that the restriction of inquiry into the specific items seized in execution of the search warrant did *not* prejudice the examination of Sandra and Julia Taylor, by counsel and, even it constituted error, any error was harmless beyond a reasonable

doubt.  As the state court found, "the excluded inquiry was an improper attempt to impeach the Taylors' credibility by introducing evidence of other bad acts *unrelated to the shooting*."  *Jones I*, 2005 WL 1026538, *1.  The petitioner fails to establish that the search and seizure of contraband at the Taylors' residence bore more than a collateral relationship to the shooting.  Moreover, as the state court observed, the trial judge had allowed the suggestion that the Taylors implicated the petitioner to protect themselves from prosecution "to be aired sufficiently;" therefor if there was error in the limitation, it was harmless error.  *Id.*  In particular, defense counsel was allowed to inquire about Sandra and Julia Taylor's motive or bias to testify against the petitioner to avoid being prosecuted.  He specifically inquired of them whether they had received a favorable treatment in exchange of their testimony.  Critically, the trial judge did not prohibit defense counsel from inquiring about whether items were seized,[5] or whether the Taylors or anyone else had been arrested. The only limitation imposed by the trial judge concerned the specific items seized.  As defense

_____

[5]  The Appeals Court noted in its opinion that the trial judged had permitted the petitioner "to describe the items seized as 'contraband.'"  *Commonwealth v. Jones*, No. 01-1678, 2005 WL 1026538, *2 n.2 (Mass. App. Ct. May 2, 2005) ("*Jones I*"). However, the term "contraband" does not appear verbatim in the hearing transcripts.  The trial judge allowed defense counsel to inquire whether the police found what was termed "some stuff" during the search.

counsel conceded during a side-bar conference, he was allowed to inquire "about the fact that a search was done and that [the police] found some things and not get into what exactly they found." The Appeals Court reasonably found that "the danger of unfair prejudice outweighed any probative value that reference to the fruits of the search might have on the question of credibility." *Id. at *2.* The introduction of evidence regarding the specifics of the items seized may have caused a diversion of the jury's attention to the specifics of bad acts entirely collateral to the criminal offenses being tried and that diversion may accordingly have been prejudicial to the prosecution.

The petitioner attempts to compare his situation to that in *Davis* and in *Van Arsdall*, but the analogy is unpersuasive. In *Davis*, petitioner had been convicted of grand larceny and burglary following a trial in which the trial judge prevented defense counsel from questioning a key witness concerning his adjudication as a juvenile delinquent relating to a burglary and his probation status at the time of the events. 415 U.S. at 309-11. Following the affirmance of petitioner's convictions by the Alaska Supreme Court, the United States Supreme Court reversed and remanded, holding that "the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness]'s

testimony." *Id.* at 317. In particular, the court ruled that counsel should have been permitted to ask the witness not only "*whether* he was biased," but also "*why* [he] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." *Id.* at 318. Unlike in *Davis*, defense counsel in the present case was permitted to inquire not only about *whether* Sandra and Julia Taylor were biased, but also about *why* they might have been biased.

Equally unconvincing is the petitioner's analogy to *Van Arsdall*. In *Van Arsdall*, petitioner was convicted of murder following a trial in which the trial court had refused to allow defense counsel to inquire of a key witness about an agreement awarding dismissal of a pending drunkenness charge in exchange of his testimony. 475 U.S. at 674-76. On appeal, the Delaware Supreme Court reversed petitioner's conviction, finding that, by barring *any* cross-examination of the witness about the dismissal of the public drunkenness charge, the trial judge's ruling denied petitioner his constitutional right to effective cross-examination. *Id.* at 677. Although the United States Supreme Court disagreed with the state court's conclusion regarding the nature of the error created by a Confrontation Clause violation,[6]

_____

[6] The Delaware Supreme Court in *Van Arsdall* concluded that "a blanket prohibition against exploring potential bias through cross-examination" constituted "a per se error." 475 U.S. 676, 677-78 (1986). The United States Supreme Court disagreed, holding that "the constitutionally improper denial of a

13

it nevertheless concurred that a Confrontation Clause violation

had been established.  As the Supreme Court observed, by "cutting

off all questioning about an event that the State conceded had

taken place and that a jury might reasonably have found furnished

the witness a motive for favoring the prosecution in his

testimony, the court's ruling violated respondent's rights

secured by the Confrontation Clause."  *Id.* at 679.  Once again,

unlike in *Van Arsdall*, the trial judge in the present case did

not prohibit "*all* inquiry" into the possibility that Sandra and

Julia Taylor would be biased as a result of the search of their

residence and their exposure to prosecution.  Instead, defense

counsel was allowed to inquire, and did inquire, about whether

Sandra and Julia Taylor had received a favorable treatment in

exchange of their testimony.  The petitioner's reliance on *Van

Arsdall* is therefore also misplaced.

Accordingly, I do not find that the state court's conclusion

that the petitioner was not prejudiced by the restriction on

cross-examination concerning the specific items seized during the

search at the Taylor's residence was either "contrary" to

established federal law as enunciated by the Supreme Court or

resulted in an unreasonable application of that law.  This

---

defendant's opportunity to impeach a witness for bias, like other
Confrontation Clause errors, is subject to . . . [a] harmless-
error analysis."  *Id.* at 684.

14

finding warrants the denial of habeas relief on the Confrontation
Clause grounds asserted.

**B.     *Unduly Suggestive or Unfair In-Court Identification***

Jones argues that the in-court identification by Dawn
Jennings was impermissibly suggestive or unfair in violation of
the Sixth and Fourteenth Amendments of the United States
Constitution.  This argument finds support, the petitioner
contends, in Jennings' failure to previously to identify the
petitioner when presented with an array of photographs, which
included a picture of him.  The Appeals Court affirmed the trial
court's admission of the in-court identification of the
petitioner by Jennings, finding that it was "sufficiently based
on her observations on the day of the shooting." *Jones I*, 2005
WL 1026538, *2.

The Due Process Clause of the Fourteenth Amendment prohibits
the admission of in-court eyewitness identification that is "so
impermissibly suggestive as to give rise to a very substantial
likelihood of irreparable misidentification." *Judd v. Vose*, 813
F.2d 494, 498 (1st Cir. 1987) (quoting *Simmons v. United States*,
390 U.S. 377, 384 (1968)).  "Short of that point, such evidence
is for the jury to weigh . . ., for evidence with some element of
untrustworthiness is customary grist for the jury mill." *Manson
v. Brathwaite*, 432 U.S. 98, 116 (1977); *United States v.
DeCologero*, 530 F.3d 36, 61 (1st Cir. 2008).  Even if an in-court

identification is suggestive, "identification testimony will not be excluded if the identification otherwise possesses sufficient aspects of reliability." *Vose*, 813 F.2d at 498; *Brathwaite*, 432 U.S. at 114 ("reliability is the linchpin in determining the admissibility of identification testimony" in the context of confrontation). The factors to be considered in determining the reliability of identification testimony include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199 (1972).

With these guideposts in place, the petitioner contends that the *Brathwaite* standard and the *Biggers* factors applied to the instant case warrant habeas relief. This argument is unconvincing. At the threshold, it is by no means certain that *Brathwaite* and *Biggers* are fully applicable to the question whether the admission of Jennings' in-court identification by the state court was "contrary to" established federal law. Both cases involved testimony derived from potentially defective *pretrial* identification procedures. *See Brathwaite*, 432 U.S. at 101; *Biggers*, 409 U.S. at 193-96. Because the Supreme Court has never applied either the standard set forth in *Brathwaite,* nor

the specific *Biggers* test in a context where, as here, the only identification was made *at trial*, the state court's admission of Jennings' in-court identification cannot be "contrary to" established federal law as determined by the Supreme Court. *See Kennaugh v. Miller*, 289 F.3d 36, 44 (2d Cir. 2002) (Calabresi, J.) ("since *Biggers* and *Brathwaite* did not involve facts [where the only identification occurred in open court], the state court's decision cannot be deemed *contrary* to clearly established federal law as defined by the Supreme Court").

Moreover, application of the *Brathwaite* standard and the specific *Biggers* factors here does not demonstrate that the admission of Jenning's in-court identification was unreasonable. Even assuming that her in-court identification was somehow the result of suggestive circumstances, Jenning's identification was sufficiently reliable to preserve the petitioner's due process rights. Jennings had an adequate opportunity to witness the events at a distance of four to five feet and gave careful attention to the petitioner's conduct. In addition, she provided an accurate description of the petitioner as being approximately six feet four tall and having crooked teeth and bloodshot eyes. Although Jennings first failed to identify the petitioner when presented with an array of photographs, she admitted to the jury that it was only during a court recess that she was able fully to observe the features of the petitioner's figure, as well as his

teeth.  It is thus *not* unreasonable to infer, as the state court did, that her failure to identify the petitioner earlier "went to the weight to be accorded to her testimony, not to its admissibility." *Jones I*, 2005 WL 1026538, at *2.  Other circumstances bolstering the reliability of Jennings' identification of the petitioner include the fact that she did not identify anyone else during the five years that followed the shooting, and that her identification was corroborated by two other witnesses who, during the trial, also identified the petitioner as being the shooter.

The state court's admission of Jennings' in-court identification of the petitioner was not so suggestive as to violate due process because it was "sufficiently based on her observations on the day of the shooting." *Id.*  As the Supreme Court has made clear, "[j]uries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *Brathwaite*, 432 U.S. at 116.

## C.    *Ineffective Assistance of Counsel*

Petitioner contends that his trial attorney rendered ineffective assistance of counsel by (1) failing to call another witness to rebut the in-court identification, and (2) failing to move for mistrial based on evidence of prior bad acts.  Both

18

theories were rejected by the state court. *Jones I*, 2005 WL 1026538, *3; *Jones II*, 2009 WL 3379062, *1.

The Sixth and Fourteenth Amendments entitle a defendant to effective assistance of counsel in all criminal proceedings. U.S. CONST. AMEND. VI, XIV. To establish ineffective assistance of as a ground for federal habeas relief, a petitioner must show (1) that "counsel's performance was deficient," i.e., "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed [to] the defendant by the Sixth Amendment," and (2) that "the deficient performance prejudiced the defense," i.e., "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Schuman v. Spencer*, 636 F.3d 24, 31 (1st Cir. 2011) (same). "Reviewing courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and represents sound trial strategy." *Jewett v. Brady*, 634 F.3d 67, 75 (1st Cir. 2011) (quoting *Strickland*, 466 U.S. at 689). The Supreme Court has recently reinforced the deference accorded in federal habeas corpus proceedings to the application of the *Strickland* standard by state courts. *See Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770, 785 (2011) (holding that "the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," and not "whether defense

counsel's performance fell below *Strickland*'s standard"). The standard applicable to ineffective assistance of counsel claims in this habeas proceeding is therefore "highly deferential." *Pinholster*, 431 S. Ct. At 1403. (quoting *Strickland*, 466 U.S. at 689).

## 1. Failure to Call Additional Witness

The petitioner contends that his trial attorney rendered ineffective assistance of counsel by failing to call Rondella Williams as a witness during the trial. Jones places great weight on the fact that Mrs. Williams did not identify the petitioner as the shooter when presented with an array of photographs, which included one of him, approximately two months following the events. He contends that, because the likelihood of her identifying the petitioner during the trial was "minuscule," her testimony would have given "a powerful rebuttal" of Jennings' in-court identification.

The state court's application of the *Strickland* standard as to counsel's failure to call Rondella Williams was *not* unreasonable.[7] The decision of the defense counsel not to call this additional witness can only be viewed as a reasonable, tactical decision. *See Lema v. United States*, 987 F.2d 48, 54 (1st Cir. 1993) ("The decision whether to call a particular

---

[7] Petitioner concedes that the state court was not *per se* "contrary to" established Supreme Court law, but instead suggests that its application of that law was "unreasonable."

20

witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony."); *see also Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). As the state court noted,[8] Mrs. Williams did not witness the shooting itself, though she provided a description of the clothing of a man she saw fleeing on the day of the shooting (i.e., green t-shirt and black pants), which corroborated the description provided by Dawn Jennings. For the same reasons as those applicable to the first time in-court identification by Jennings, it was not merely a theoretical possibility that Rondella Williams would have been able to identify the petitioner during the trial, regardless of her previous failure to do so. Even assuming that Mrs. Williams would have been unable to identify Jones at trial, the petitioner fails to demonstrate how this would necessarily have affected the evidentiary weight accorded to Jennings' in-court identification. This is particularly true in light of the fact that two other

---

[8] The Appeals Court did not explicitly provide its own explanation for denying the ineffective assistance of counsel claim pertaining to counsel's failure to call Rhonda Williams, other than by referring to "the reasons set forth in the Commonwealth's brief." *Jones I*, 2005 WL 1026538, *3. While I recognize that the Appeals Court, like many courts has a demanding caseload, shorthand reference to the briefing of a party as a grounds for decision does not encourage the appearance of independent judgment fundamental to a court's legitimacy. Nevertheless, this expedient does constitute a judgment by the state court on the merits of the issue.

witnesses had provided an in-court identification of Jones as being the shooter.

Given what were at best uncertainties, the decision of defense counsel not to call Rondella Williams to the witness stand was neither surprising nor unreasonable. Consequently, I agree with the state court's conclusion that "there is no merit to the defendant's contentions that his attorney rendered ineffective assistance of counsel in failing to call Rondella Williams or that bunter mark analysis would have made a difference at trial." *Jones I*, 2005 WL 1026538, *3; *see also Jones II*, 2009 WL 3379062, *1.

2.    Failure to Move for Mistrial

At trial, defense counsel posed a series of questions to Detective Van Zandt about Julia Taylor to determine her motive to report the threats made by the petitioner:

> Q: Now, you testified to this jury that you received a telephone call from Mrs. Taylor regarding threats being made to her grandson?
> A: Yes, sir.
> Q: Now, were those her exact words?
> A: Yes.
> Q: What were her exact words?
> A: Her exact words was [*sic*] that she wanted me to come up and talk to one of the boys up there in the neighborhood that had threatened her grandson because he had already -- her exact words, *he had already killed two people* and that she thought that maybe he might kill her grandson and that she just wanted me to talk to him. She didn't want a report made out. She just wanted me to find him and speak to him about the threat that he made to her grandson.

The petitioner contends that trial attorney rendered ineffective assistance of counsel by failing to move for a mistrial as a result of the Julia Taylor's testimony that "he had already killed two people."

The application of the *Strickland* standard by the state court with regard to counsel's failure to move for a mistrial was not unreasonable. The failure of defense counsel to move for a mistrial based on the report of Julia Taylor's uncorroborated assertion of other bad acts by the petitioner was objectively within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. In deciding whether to move for a mistrial, defense counsel was required to balance the harm caused by the testimony against the possibility that a new trial would be less favorable to his client. That decision is made in the realm of trial strategy where showing bias by Mrs. Taylor against the petitioner could reasonably be consistent with the risk of exposing the jury to Mrs. Taylor's dramatic – but not further substantiated – claims of other bad acts by petitioner. *See Hammond v. Hall*, 586 F.3d 1289, 1335 (11th Cir. 2009) (holding that "trial court reasonably applied *Strickland* in denying [petitioner]'s ineffective assistance of counsel claim because he did not establish that the failure to request a mistrial was outside the wide range of reasonable professional assistance") (citation omitted); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir.

2008) ("It is oft-recognized that the decision not to seek a mistrial is frequently a strategic one."); *West v. Seabold*, 73 F.3d 81, 85 (6th Cir. 1996) ("We are in no position, on this record, to second-guess defense counsel's [decision not to move for a mistrial] as not being within the range of reasonable professional assistance."); *Galowski v. Murphy*, 891 F.2d 629, 639 (7th Cir. 1989) ("The decision whether to move for a mistrial or instead to proceed to judgment with the expectation that the client will be acquitted is one of trial strategy."); *see also United States v. Moran*, 393 F.3d 1, 10 (1st Cir. 2004) ("There are both tactical and strategic reasons why a party might seek a judgment of acquittal but not a new trial (for example, a fear that the prosecution will learn from its mistakes and put in a more persuasive case the second time around . . . or a fear that a shift in judges will lead to a stiffer sentence).").

Consistent with this approach, the state court supportably found "[t]hat a reasonable tactic may not have succeeded does not render counsel's efforts ineffective." *Jones I*, 2005 WL 1026538, *3.

Moreover, the petitioner fails to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Downs v. Hoyt*, 232 F.3d 1031, 1038 (9th Cir. 2000) ("even if [petitioner] could show deficient

performance, the record does not establish a reasonable probability that, but for counsel's alleged ineffective performance, the result of the proceeding would have been different"). Given that no less than three witnesses had identified during trial the petitioner as being the shooter, the possibility that the jury would have returned a "not guilty" verdict, had the report of Julia Taylor's statement regarding other purported bad acts not be brought out at the trial, was unlikely. *See Burston v. Caldwell*, 506 F.2d 24, 28 (5th Cir. 1975) ("The failure of petitioner's counsel to move for a directed verdict did not render [counsel's] assistance ineffective where there was possibly sufficient evidence of guilt to support a guilty verdict.").

## D.   *Evidentiary Hearing*

The petitioner claims he is entitled to an evidentiary hearing in this court to develop more fully the factual basis for his second motion for a new trial. The petitioner contends that the Commonwealth must have deliberately withheld, in violation of *Brady v. Maryland*, 363 U.S. 83 (1963), evidence that would shed light on the veracity of the allegations contained in the affidavit authored twelve years after the shooting by Kenneth Taylor. This claim involves allegations for which the applicable analysis centers on § 2254(d)(1).

To be sure, Section 2254(e)(2) by terms imposes limits on the availability of federal evidentiary hearings in habeas corpus proceedings involving state prisoners:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). The Supreme Court has recently refined the legal framework applicable as to federal evidentiary hearings under this section. *See Pinholster*, 131 S. Ct. at 1398-401; *Atkins v. Clarke*, 642 F.3d 47, 48-49 (1st Cir. 2011). *Pinholster,* which was handed down shortly before petitioner's brief in opposition to the motion to dismiss was filed, held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) *on the record that was before that state court.*" *Pinholster*, 131 S. Ct. at 1400 (emphasis added); *see also Schiro v. Landrigan*, 550 U.S. 465, 474 (2007) ("if the [state] record refutes the applicant's factual allegations or otherwise

precludes habeas relief, a district court is not required to hold an evidentiary hearing"). It follows that § 2254(e)(2) concerns claims that "were not adjudicated on the merits in state court" within the meaning of § 2254(d)(1). *Pinholster*, 431 S. Ct. at 1401; *cf*. *Atkins*, 642 F.3d at 49 (noting that Section 2254(e)(2) "may apply when a constitutional claim was not 'adjudicated on the merits' within the meaning of § 2254(d)(1)"). An adjudication "on the merits" within the meaning of § 2254(d)(1) does not, however, require that an evidentiary hearing has been conducted previously. *See Atkins*, 642 F.3d at 49 (rejecting petitioner's suggestion that there can be no "adjudication on the merits" unless the state court "has given a full and fair evidentiary hearing.").

The petitioner's request for an evidentiary hearing in this court must be denied in light of *Pinholster*. The state court adjudicated on the merits his claim concerning Kenneth Taylor's affidavit. The issues were fully briefed by the petitioner both at the state trial and the appellate levels. In its opinion, the Appeals Court clearly stated that the trial judge "did not abuse its discretion in denying the defendant's motion for a new trial [based on Kenneth Taylor's affidavit] *without an evidentiary hearing.*" *Jones II*, 2009 WL 3379062, *1 (emphasis added). The state court explained at length its reasons for not finding Kenneth Taylor's affidavit reliable. Specifically, the court

observed that "[t]he timing, substance and attending
circumstances of the affidavit undermine its reliability to such
a degree that the motion judge was well within his discretion to
deny the [petitioner]'s motion for a new trial."[9] *Id*.  Having
found that the state courts have "adjudicated on the merits"
petitioner's claim regarding the belated Taylor affidavit and
implicitly any speculation claim about some unidentified *Brady*
violation, I am directed under § 2254(d)(1) to deny petitioner's
request for an evidentiary hearing in this court.[10]  As Justice
Sotomayor in her *Pinholster* dissent observed disapprovingly, even
in the face of an established *Brady* violation when "the state

---

[9]   Certainly, the circumstances surrounding the introduction
of Kenneth Taylor's affidavit provided sufficient grounds for the
court's conclusion.  The affidavit was drafted over twelve years
after the shooting at a time when Kenneth Taylor was incarcerated
at MCI-Cedar Junction with the petitioner.  Kenneth Taylor was
the only person who identified Rasheed Fountain, whereas no less
than three *other* witnesses identified Jones as being the shooter.
Finally, the credibility of the Kenneth Taylor's affidavit was

undermined by the fact that Rasheed Fountain was no longer alive
and therefore could not be subject to criminal prosecution.

[10]   In the second amended habeas application, the petitioner
also requests that an evidentiary hearing be held on his
ineffective assistance of counsel claim.  He failed, however, to
develop this issue in his opposition to respondent's motion to
dismiss.  More fundamentally, for the reasons I deny Jones'
request for a hearing regarding his exculpatory evidence claim, I
conclude substantially that petitioner's request for an
evidentiary hearing concerning his ineffective assistance of
counsel claim must be also denied.  *See Pape v. Thaler*, No.
11-10008, --- F.3d ----, 2011 WL 2476437, *3 (5th Cir. June 23,
2011) (applying the same analysis to a request for an evidentiary
hearing on an ineffective assistance of counsel claim under
*Pinholster*).

court adjudicated the petitioner's *Brady* claim on the merits, §
2254(d)(1) would still apply . . . under the majority's
interpretation of § 2254(d)(1), a federal court is now prohibited
from considering the new evidence in determining the
reasonableness of the state-court decision." 131 S. Ct. at 1418.

## IV.  CONCLUSION

For the reasons set forth more fully above, I GRANT
respondent's motion to dismiss the instant petition. (Dkt. No.
56.)


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE